## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY E. PROCTOR, #CU-4530                              )   CIVIL ACTION NO.
                Plaintiff                              (
             VS. *DEFENDANTS:*                    )
C.O.GRAFFUS (REPORTING OFFICER OF **DC-141#572357**      (
**OF 5/3/2013)**                                         )
              AND                           (
SGT.GRASSMYER (REPORTING OFFICER OF **DC-141**           )
**#414832 OF 6/5/2014)** & LT.LUSK & SGT.JAMES & SGT.    (
WHIPPLE & C.O.PACKARD AND OTHER OFFICERS AS              )
IDENTIFIED BY SURVEILLANCE VIDEO AS WELL AS              (
S.ELLENBERGER (HEARING EXAMINER) & PROGRAM               )
REVIEW COMMITTEE MEMBERS: LT.GLASS, BOBBI JO             (
SALAMON & DAVID LINK; AND TAMMY FERGUSON                 )
(SUPERINTENDENT)                                         (
              AND                           )
SGT.McCULLOUGH (REPORTING OFFICER OF **DC-141**          (
**#414662 OF 1/15/2013)** & S.ELLENBERGER (HEARING       )
EXAMINER) & PROGRAM REVIEW COMMITTEE MEM-                (
BERS: BOBBI JO SALAMON, TIMOTHY GRAHAM,                  )
DAVID LINK, JENNIFER ROSSMAN, SHAWN WIGGINS;             (
AS WELL AS TAMMY FERGUSON (SUPERINTENDENT);              )
ROBIN LEWIS (CHIEF HEARING EXAMINER); LT. LUC-           (
IANO, C.O.HAMMERS & SGT.JAMES                            )
              AND                           (
WILBERT MATHEWS (UNIT MANAGER OF F-UNIT) &               )
TAMMY FERGUSON (SUPERINTENDENT) **(INCIDENT**            (
**OF MAY 14-15, 2015)**                                  )
              AND                           (
C.DANISON (E-UNIT MANAGER) & D.SERGEANT (E/A-            )
UNIT COUNSELOR) **(INCIDENT OF JULY 15, 2016)**          (

**FILED**
**SCRANTON**

AUG 1 1 2016

PER ———— DEPUTY CLERK

### CIVIL RIGHTS ACTION UNDER 42 U.S.C. § 1983

**AND NOW** comes the Plaintiff, Anthony E. Proctor, pro se, and respectfully submits this

civil action against the defendants in their official capacities while seeking damages in excess of

fifty-thousand dollars. Plaintiff is currently confined as State Correctional Institution at Benner

Township, 301 Institution Drive, Bellefonte, PA 16823.

-1-

**FIRST CAUSE OF ACTION** in this 5-link chain of continuing civil rights violations:

At DC-141 #572357 of 5/3/2013, by C.O.Graffus attached as **EXHIBIT "A-1"**: C.O.Graffus used this DC-141 misconduct report to discriminate against the plaintiff and to violate the plaintiff's constitutional rights under both the U.S.C.A. XIV (regarding due process of laws & equal protections of laws) and the U.S.C.A. VIII (regarding cruel and unusual punishment) where C.O.Graffus violated policies of the Department of Corrections to the detriment of the plaintiff. Numbered and following are the material facts of this claim.

1) The surveillance video of the physical altercation relative to this claim revealed that the plaintiff was violently attacked by ambush from behind by another inmate as the plaintiff walked from the prison yard to his housing unit.

2) The surveillance video revealed that the plaintiff fended off the violent ambush attack in an act of self-defense.

3) The surveillance video revealed that the plaintiff remained on the scene of the violent ambush attack as C.O.Graffus approached the scene while the assailant ran away from the scene blending in with the crowd which symbolized a consciousness of his guilt.

4) C.O.Graffus charged the plaintiff with two misconduct charges (namely: class 1 #16 fighting & class 1 #35 refusing to obey an order [to stop fighting])

5) C.O.Graffus reported in this misconduct report (#572357) that "they (plaintiff & assailant) refused this officers order."

6) C.O.Graffus **"covered-up"** the misconduct behaviors of the assailant who attacked the plaintiff by only charging the assailant with one misconduct charge (namely, class 1 #16 fighting) despite the fact that the assailant ran off when ordered "to stay" on the scene and

-2-

despite the fact that the assailant refused the officer's order "to stop" fighting and despite the fact

that surveillance video showed that the assailant had launched an unprovoked assault against the

plaintiff from behind.

7)   The hearing examiner dismissed without prejudice (DWOP) both misconduct charges

after the plaintiff directed the hearing examiner to look at the surveillance video to see that the

assailant had attacked the plaintiff from behind without provocation as the plaintiff walked from

the prison yard to his housing unit.

8)   C.O.Graffus did neither re-wrote the misconduct report nor re-charged the plaintiff with

misconduct behaviors after the hearing examiner DWOP the misconduct charges.

9)   After the plaintiff was released from the Restricted Housing Unit (RHU), C.O.Graffus

explained to the plaintiff one day in the prison yard that he did not re-write the misconduct report

and re-charge the plaintiff with misconduct behaviors because "that guy attacked you. What was

that all about anyway?"

**CONCLUSION**: These material facts solidify plaintiff's claims that C.O.Graffus violated

the plaintiff's constitutional rights as asserted in this cause of action.

**SECOND CAUSE OF ACTION** in this 5-link chain of continuing civil rights violations:

At DC-141 #414382 of 6/5/2014, by Sgt.Grassmyer, attached as **EXHIBIT "B-1"**: Sgt.

Grassmyer and all defendants named in the caption following his name—at the second group of

defendants—used this DC-141 misconduct report and the adverse consequences to the plaintiff

that stemmed from this misconduct report as an act of retaliation against the plaintiff for

successfully defending against the misconduct charges lodged against the plaintiff by

C.O.Graffus (at DC-141 #572357 attached and marked EXHIBIT "A-1") and to discriminate

-3-

against the plaintiff and to violate the plaintiff's constitutional rights under both the U.S.C.A. XIV (regarding due process of laws & equal protections of laws) and the U.S.C.A. VIII (regarding cruel and unusual punishment) where the defendants violated policies of the Department of Corrections to the detriment of the plaintiff. Numbered and following are the material facts of this claim.

1) The surveillance video of the physical altercation relative to this claim shows that the plaintiff was spotted lying face down on the grass outside dining hall #1 while using his right arm to raise his torso while twisting his torso to the left while using his left closed fist to pound onto the back, neck and head of Inmate Evans in an attempt to free himself from Inmate Evans who was lying face down on the ground atop the plaintiff legs clutching the plaintiff's legs from the knees down to his chest with both arms.

2) The surveillance video shows that the defendant officers raced to the entangled inmates then separated and subdued by inmates by cuffing each inmate's hands behind his back.

3) The surveillance video shows that the defendant officers positioned Inmate Evans to face the plaintiff while the plaintiff remained face down on the grass with his hands cuffed behind his back before raising the plaintiff's torso from the grass by the arms at which point the plaintiff reasonably assumed that he was being lifted to his feet and—by default response—began to use his legs to step into the elevation of his body in correspondence with being raised to his feet at which time defendant officers began shoving the plaintiff back to the ground; and after the plaintiff was, again, face down on the ground the defendant officers handling him began crushing the plaintiff, particularly, Sgt.James who began grinding his knees into the spine and neck of the plaintiff as if he were trying to break the plaintiff's back or neck. Additionally, at one point

C.O.Packard shifted his massive body weight atop of the plaintiff's right side crushing the plaintiff's lung and causing the plaintiff to lose consciousness. Also, at one point Sgt.Whipple told the plaintiff, "Don't stand up Proctor."

4) The surveillance video shows that the second time the defendant officers began raising the plaintiff's torso from the ground the plaintiff resisted the urge to step into the elevation but rather left his legs limp until his torso was approximately 45° off the ground at which time officers turned the plaintiff's body 180° until he faced the sky at which point the plaintiff looked horizontally and was startled and terrorized to see Inmate Evans facing him, so the plaintiff began kicking (without ever making contact) to ward off what initially appeared to be Inmate Evans being let loose on him by the defendant officers while the plaintiff's hands were cuffed behind his back.

5) Immediately after the defendant officers confronted the plaintiff with the stimuli that appeared to be Inmate Evans being let loose on him while he was hand cuffed and leaning backwards suspended by his arms by officers (which compelled the kicks from the plaintiff), the surveillance video shows that the defendant officers handling Inmate Evans impulsively and suspiciously raised him from the ground and rushed him away to the doors leading to the medical department before casually raising the plaintiff from the ground and patiently escorting the plaintiff directly to the RHU without medical care.

6) Sgt.Grassmyer charged the plaintiff with class 1 #16 fighting & class 1 #1 assault.

7) Sgt.Grassmyer charged charged Inmate Evans with class #1 16 fighting.

8) The Hearing Examiner (S.Ellenberger) sanctioned the plaintiff to 30-days in the RHU for

-5-

the misconduct charge #16 fighting and to 90-days in the RHU for the misconduct charge #1
assault to run consecutively (totaling 120-days) even after the plaintiff directed the hearing
examiner to view the video to see that Inmate Evans was the aggressor. Moreover, the Hex told
the plaintiff that he (Hex) saw that the plaintiff nearly kicked an officer and that if there weren't
so many cameras on this compound they "might have done you in!"

9)   The Program Review Committee (PRC) members upheld the plaintiff's appeal of the
hearing examiner's findings of guilty on both misconduct charges despite the plaintiff's claims
that he acted in self-defense and the plaintiff's reference to the surveillance video to prove it.

10)     The Superintendent (Tammy Ferguson) upheld the plaintiff's appeal of the hearing
examiner's findings of guilty on both misconduct charges despite the plaintiff's claims the he
acted in self-defense and the plaintiff's reference to the surveillance video to prove it.

11)     Misconduct charge #16 fighting was dismissed on appeal to the Chief Hearing
Examiner by A/Deputy Secretary Central Region, Tabb Bickell, attached at **EXHIBIT "B-2"**.
**CONCLUSION**: These material facts solidify plaintiff's claims that the defendants violated the
plaintiff's constitutional rights as asserted in this second cause of action.

**THIRD CAUSE OF ACTION** in this 5-link chain of continuing civil rights violations:

At DC-141 #414662 of 1/15/2015, by Sgt.McCullough, attached as **EXHIBIT "C-1"**: Sgt.
McCullough and all defendants named in the caption following his name—at the third group of
defendants—used this DC-141 misconduct report and the adverse consequences to the plaintiff
that stemmed from this misconduct report—as well as the assault that precipitated it--as an act of
retaliation against the plaintiff for exercising his constitutional rights to defend—with a degree of
success—against the preceding two disciplinary actions (namely: DC-141 #572357 & DC-141

#414382 attached at EXHIBITS "A-1" & "B-1") by discriminating against the plaintiff--even

racially discriminating against the plaintiff--and by violating the plaintiff's constitutional rights

under both the U.S.C.A. XIV (regarding due process of laws & equal protections of laws) and

the U.S.C.A. VIII (regarding cruel and unusual punishment) where these defendants violated

policies of the Department of Corrections to the detriment of the plaintiff. Numbered and

following are the material facts of this claim.

1)  The surveillance video of the physical altercation relative to this claim shows that the

plaintiff was sitting at a table in the dayroom reading, writing and talking with another inmate

when a different inmate (Sherman #LB-5399) approached from behind the plaintiff and swung a

steel master lock propelled in a sock at the plaintiff's head in an attempt to crush the plaintiff's

skull and continued to assault the plaintiff with the crude weapon before and after the plaintiff

realized what was happening and shifted into a self-defense mode and neutralized the assailant.

2)  The misconduct report #414662 attached and marked EXHIBIT "C-1", by

Sgt.McCullough shows that the Sgt.McCullough witnessed Inmate Sherman assault the plaintiff

and disobeyed direct orders from Sgt.McCullough to stop the assaultive behaviors.

3)  After a number of correction officers arrived on the scene and subdued the plaintiff with

handcuffs locking his hands behind his back, Sgt. McCullough—who is white, as is the assailant,

stated in a loud voice, **"Proctor has resorted to beating up little white boys now! He [Inmate

Sherman] was stupid for attacking him [plaintiff] with a lock-in-a-sock; he should have

used a bat!"** This statement sent a message to everyone in earshot of the Sgt.'s statement that the

Sgt. condones violence against the plaintiff, which is a deliberate indifference toward the health

and welfare of the plaintiff.

-7-

4)  Sgt. McCullough **"covered-up"** the assault by Inmate Sherman on the plaintiff by abstaining from charging Inmate Sherman with a **class 1 #1 assault** misconduct charge.

5)  Sgt. McCullough witnessed the plaintiff acting in self-defense against the life-threatening ambush assault but charged the plaintiff with two misconduct charges (namely: class 1 #16 fighting & class 1 #35 disobeying an order [to stop fighting].

6)  The Hearing Examiner (S.Ellenberger) was confronted with a misconduct report that contained "no" evidence of the plaintiff involved in any specific physical activities prohibited by D.O.C. policy insofar as fighting by way of punching, kicking, pushing, holding, ect. for example:  *On the above date and time I/M Proctor (CU4530) was in a fight on FA Unit*

> *dayroom. I/M Proctor was fighting with I/M Sherman (LB5399) after I/M Sherman*
> *struck I/M Proctor with a soap in a sock. I gave I/M Proctor several direct orders,*
> *along with I/M Sherman to stop fighting. I/M's both refused all orders.*

So the hearing examiner asked the plaintiff to sign a waiver so that the hearing examiner could view the video of the physical altercation, and the plaintiff refused, and the hearing examiner retaliated by adjudicating the plaintiff guilty of both misconduct charges and sanctioned the plaintiff to 60-days for class 1 #16 fighting & 60-days for class 1 #35 disobeying an order [to stop fighting] to run consecutively (totaling 120-days) despite the absence of evidence of prohibited behaviors in the misconduct report.

7)  The  (white male) Hearing Examiner (S.Ellenberger) discriminated against the plaintiff— even racially discriminated against the plaintiff—by sanctioning the Afro American plaintiff to 120-days in the RHU for two misconduct charges; then he turned around and sanctioned the "white" assailant and perpetrator of the assault to 120-days in the RHU for three misconduct

-8-

charges—which was 33% less disciplinary custody time for the "white" assailant than that for which he gave the afro American victim of the assault, i.e. the plaintiff.

8)  On appeal the (all white) Program Review Committee (PRC members Bobbi Jo Salamon, Timothy Graham, David Link, Jennifer Rossman & Shawn Wiggins) upheld the hearing examiner's findings of guilty on both misconduct charges despite the plaintiff's claims that he acted in self-defense and the plaintiff's reference to surveillance video and the misconduct report that prove that he acted in self-defense.

9)  On appeal the Superintendent (Tammy Ferguson, a white female) upheld the hearing examiner's findings of guilty on both misconduct charges despite the plaintiff's claims that he acted in self-defense and the plaintiff's reference to the surveillance video and the misconduct report that prove it.

10)    On appeal Superintendent (Tammy Ferguson, a white female) indicated in her report to the plaintiff's second level appeal that she acknowledges that the plaintiff acted in self-defense, yet she still upheld the hearing examiner's findings of guilty; albeit, the superintendent did reduce the disciplinary sanction by 50%, for example:

> "I have reviewed the video recording of the incident on January 11, 2015.
>
> The recording yields that **you did act defensively** and engaged in a series of punches against inmate Sherman, LB5399, **in response to his actions.**"

11)    On appeal the Chief Hearing Examiner (Robin Lewis) upheld the hearing examiner's findings of guilty on both misconduct charges despite the plaintiff's claims that he acted in self-defense and the plaintiff's reference to the surveillance video and the misconduct report to prove it as well as the superintendent's report acknowledging that the plaintiff acted defensively in

response to the violent ambush assault against the plaintiff with a lock-in-a-sock in an effort to crush the plaintiff's skull.

12)    Lt.Luciano, Sgt.James and C.O.Hammers were three of the first responders on the scene of the violent ambush assault who expressed surprise by the plaintiff's lack of head injuries. These "expressions of surprise" were put into words by C.O.Hammers who initiated this exchange with the plaintiff in the RHU:

"You fucked that guy up!" said C.O.Hammers

"He tried to crush my skull with a lock-in-a-sock," replied the plaintiff.

**"It's just crazy because 'we'** (Lt.Luciano & Sgt.James) **rushed down there <u>expecting one thing</u> then found that guy lying face down on the floor unconscious in a puddle of blood!** That guy didn't need a lock-in-a-sock; he needed about twelve of his buddies!"

The bold text expressed "the unexpected", and the only way these three first responding officers could have experienced a sense of "the unexpected" is if they (Lt.Luciano, Sgt.James & C.O.Hammers) knew of the life threatening ambush attack aimed at crushing the skull of the plaintiff before Inmate Sherman launched the violent ambush attack; otherwise; they would not have hand any basis upon which to expect anything other than what they found upon their arrival of the scene of the assault, *unless these three officers had directed the violent attack.*

**CONCLUSION**: These material facts solidify the plaintiff's claims that the defendants named in this cause of action violated the plaintiff's constitutional rights as asserted in this cause of action.

**FOURTH CAUSE OF ACTION** in this 5-link chain of continuing civil rights violations:

On May 14-15, 2015, Superintendent, Tammy Ferguson and Unit Manager of F-Unit, Wilbert Mathews, orchestrated the interception from the prison's mail system the plaintiff's

-10-

Civil Rights Action, under 42 U.S.C. § 1983 and the relevant documents—which amounted to approximately 450 pages of documentation. Numbered and following are the facts of this claim.

1) On May 14, 2015, the plaintiff approached the officer's desk on F-Unit where C.O.Fisher and Sgt.Dececco sat and asked C.O.Fisher to process the "postage cash slip" that the petitioner had attached to the oversized legal envelope (10"x15") containing 13 copies of the plaintiff's Civil Rights Action, under 42 U.S.C. § 1983 and the relevant documents—which amounted to approximately 450 pages of documentation.

2) C.O.Fisher complied with the plaintiff's request by processing the "postage cash slip" that the plaintiff had attached to the oversized legal envelope before C.O.Fisher placed the legal envelope inside a large canvas mailbag and placed the mailbag on the floor at the feet of Sgt.Dececco who was sitting at the officer's desk, the lower of the two desk tops.

3) The plaintiff await the return of the carbon copy of the "postage cash slip"—which never arrived. The absence of this receipt was a "red flag" that the legal mail had been intercepted.

4) At the end of the month (May, 2015), the plaintiff received his monthly statement which revealed that he was not charged postage fees for the oversized legal envelope containing 13 copies of the plaintiff's Civil Rights Action, under 42 U.S.C. § 1983 and the relevant documents—which amounted to approximately 450 pages of documentation. The absence of the postage charges served as confirmation to the plaintiff that the legal mail had been intercepted.

5) Included along with the Civil Rights Actions was a self-addressed envelope and a copy of the first page of the civil action attached to a letter to the clerk of courts requesting that the clerk "time stamp" the cover-page and use the self-addressed envelope to return the "time-stamped" page to me for verification of its reception and processing. This document arrived

-11-

approximately one month after I filed the civil action, and the so-called "time-stamp" did not have a customary clock & date entry stamp. The date was penciled under a rubber stamp that read "RECEIVED," no time entry was included.

6)  The plaintiff subsequently withdrew the civil action of May 14, 2015, out of concern that it had been adulterated.

**CONCLUSION**: These material facts solidify the plaintiff's claims that the defendants named in this cause of action violated the plaintiff's constitutional rights as asserted in this cause of action.

**FIFTH CAUSE OF ACTION** in this 5-link chain of continuing civil rights violations:

On July 15, 2016, Unit Manager, C.Danison, of E-Unit, and Unit Counselor, D.Sergeant, of E/A-Unit, (both white males) added to the civil rights violations cited herein at the "THIRD CAUSE OF ACTION" by retaliating against the (Afro American) plaintiff by DENYING the plaintiff "unit team support" for parole where they based this "denial" upon the January 15, 2015, 18-month old, misconduct report #414662 (EXHIBIT "C-1")—which these they explained was a violation of the plaintiff's last Parole Board Action, of May 9, 2014, attached EXHIBIT "D-1". Numbered and following are the facts of this claim.

1)  On July 15, 2015, Unit Manager Danison directed the plaintiff into the office of the Unit Counslor, D.Sergeant, for what Mr.Danison described as a parole staffing. After the plaintiff took a seat Mr.Danison told the plaintiff that the plaintiff was being **DENIED** unit team support for parole. 2)  Mr.Danison went on to explain to the plaintiff that they were not giving the plaintiff unit team support for parole because of the January 15, 2015, 18-month old, misconduct report #414662 (EXHIBIT "C-1"); because, that misconduct report was a violation of a condition of the last Parole Board Action (EXHIBIT "D-1") handed down to the plaintiff.

-12-

3)  The plaintiff went to his cell and retrieved the last Parole Board Action (EXHIBIT "D-1") and confronted Mr.Danison and Mr.Sergeant with the document which revealed that their explanation for denying the plaintiff "unit team support" for parole was not true; because, the last Parole Board Action does not bare a "condition" directing the plaintiff to stay misconduct free.

4)  After the plaintiff proved as false the explanation of Mr.Danison and Mr.Sergeant for denying the plaintiff "unit team support" for parole, Mr.Danison "shifted ground" by claiming that he really meant to say that the January 15, 2015, 18-month old, misconduct report #414662 (EXHIBIT "C-1"), was a violation of a condition on the plaintiff's last DC-43 Integrated Correctional Plan.

5)  The plaintiff pointed out to Mr.Danison and Mr.Sergeant that their second explanation for denying the plaintiff "unit team support" was also not true; because, the plaintiff's last two DC-43 Integrated Correctional Plans were produced in June of 2016 and June of 2015—as products of the annual reviews--and the January 15, 2015, 18-month old, misconduct report #414662 (EXHIBIT "C-1") occurred before the DC-43 Integrated Correctional Plans of the last two years, which proved that the January 15, 2015, 18-month old, misconduct report #414662 was not a violation of the "expectations" on either of the DC-43 Integrated Correctional Plans of the past two years.

6)  After discovering that Mr.Danison and Mr.Sergeant were using the January 15, 2015, 18-month old, misconduct report #414662 (EXHIBIT "C-1") to DENY me "unit team support" for parole, the plaintiff requested and filed a grievance citing civil rights violations against Mr.Danison and Mr.Sergeant for continuing to punish--by retaliation--the plaintiff for the "protected conduct" of acting in self-defense to ward off the violent life-threatening ambush

-13-

assault perpetrated against him by the white inmate who aimed at crushing the plaintiff's skull

with a lock-in-a-sock.

**CONCLUSION:** These material facts solidify the plaintiff's claims that he defendants named in

this cause of action violated the plaintiff's constitutional rights as asserted in this cause of action.

28 U.S.C. § 1746: I, Anthony E. Proctor, declare under penality of perjury that the foregoing

is true and correct executed this 26th day of July, 2016.

WHEREFORE, the plaintiff demands a jury trial and seeks redress in excess of $50,000.


Anthony E. Proctor, #CU-4530

-14-

---

### PROOF OF SERVICE

I, Anthony E. Proctor, served the foregoing Civil Rights Action under 42 U.S.C. § 1983 by first

class mail "return receipt" by way of the United States Postal Service, on August _____, 2016.


Office of The Clerk
United States District Court
Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 North Washington Avenue
P.O. Box 1148
Scranton, PA 18501-1148


Anthony E. Proctor, #CU-4530                    DATE: August ___8___, 2016

1900
148  EXHIBIT
"A-1"

FORM **DC-141**   **PART 1**
Rev 8/05

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

B    572357

☑ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801   INFORMAL RESOLUTION

| DC Number | Name | Facility | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CU 4530 | Proctor | SC 113 | 1515 | 05/03/13 | 05/03/13 |

| Quarters | Place of Incident |
|---|---|
| G13 122 | East area Inmate Exercise |

## OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class 1 #16 Fighting Class 1 #35 Refusing to obey an order

**STAFF MEMBER'S VERSION** On the above time and date, this officer observe Inmate Proctor CU4530. Throwing wonder at Inmate Lilley KD 40032. This officer gave several orders to stop fighting, they refused this officer orders.

**IMMEDIATE ACTION TAKEN AND REASON** Misconduct warranted. Inmate placed in the RHU under pre-hearing confinement status until seen by the hearing examiner.

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| IF YES | | |
| ☑ YES | TIME | DATE |
| ☐ NO | | |

**FORMS GIVEN TO INMATE**
☑ REQUEST FOR WITNESSES AND REPRESENTATION   ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING O.C. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| COI | GREEE COII | 05/03/13 | 2100 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS 1   ☐ CLASS 2 | TBC   COI |
| 05/04/13 | | | |

### NOTICE TO INMATE
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15        YELLOW — Inmate        PINK — Reporting Staff Member        GOLDENROD — Deputy Superintendent Facility Management

EXHIBIT "B-1"

FORM DC-141   PART 1
Rev 8/05

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS**

B 414382

☑ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801   INFORMAL RESOLUTION

| DC Number | Name | Facility | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CU4530 | Proctor Antwaine Ben | BEN | 1654 | 6/5/14 | 6/5/14 |

| Quarters | Place of Incident |
|---|---|
| CA1078-1 | West walk |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| EW2583 | EVANS, Michael Lee | X | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** A CLASS 1 #1 (Assault)
A. CLASS 1 #16 (Fighting)

**STAFF MEMBER'S VERSION**

On the above date and approx. time I Sgt Grossmyer seen Inmate Proctor CU4530 hitting Inmate Evans (EW2583) with closed fists. Once Both inmates were on the ground trying to get secured by responding officers Inmate Proctor CU4530 had kicked inmate Evans EW2583 in the head.

**IMMEDIATE ACTION TAKEN AND REASON** Investigated. No further inquiry needed. Inmate informed of this report and placed P.H.C in the RHU pending the Hearing results.

| PRE-HEARING CONFINEMENT | |
|---|---|
| IF YES | |

☑ YES
☐ NO   TIME 1655   DATE 6-9-14

Formal due to charges

FORMS GIVEN TO INMATE
☑ REQUEST FOR WITNESSES AND REPRESENTATION   ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Grossmyer cat | COII | 6-9-14   2105 |

YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER
DATE 6/11/14   TIME 0800

| MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|
| ☑ CLASS 1  ☐ CLASS 2 | COI Little |

**NOTICE TO INMATE**
You are scheduled for a hearing on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15    YELLOW — Inmate    PINK — Reporting Staff Member    GOLDENROD — Deputy Superintendent Facility Management

EXHIBIT "B"

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1920 Technology Parkway
Mechanicsburg, PA 17050

August 4, 2014

OFFICE OF THE
CHIEF HEARING EXAMINER

Anthony Proctor, CU-4530
SCI-Benner Township
301 Institution Drive
Bellefonte, PA 16823

Re:    DC-ADM 801 - Final Review
       Misconduct No. B414382

Dear Mr. Proctor:

This is in response to your appeal to Final Review of the above-numbered misconduct. In accordance with DC-ADM 801, § 5 (C. 6), the Office of the Chief Hearing Examiner has reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and her response.

Upon completion of review, it is the recommendation of the Chief Hearing Examiner's Office that the finding of guilty for Charge #1 Assault and the corresponding 90 day disciplinary custody be upheld, but that Charge #16 Fighting and the corresponding 30 day disciplinary custody sanction be dismissed. The sanction total for misconduct B414382 will be 90 days disciplinary custody.

I concur with the recommendation. Accordingly, the finding of guilty for Charge #1 Assault is upheld at Final Review. Charge #16 is hereby amended.

Sincerely,

Tabb Bickell
A/ Deputy Secretary
Central Region

TB:srh
cc:    A/ Superintendent Ferguson

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

EXHIBIT "C-1"

| FORM DC-141   PART 1<br>Rev 8/05 | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | B 414662 |
|---|---|---|

☑ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801   INFORMAL RESOLUTION

| DC Number | Name | Facility | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| CU4530 | Proctor | SCI-BEN | 1930 | 11 Jan 15 | 11 Jan 15 |

| Quarters | Place of Incident |
|---|---|
| FA 243 | FA Dayroom |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| LB5399 | Sherman | X | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** A. Class 1 #16, Fighting, #35 Refusing to obey an order.

**STAFF MEMBER'S VERSION** On the above date and time I/m Proctor(CU4530) was in a fight on FA unit Dayroom. I/m Proctor was fighting with I/m Sherman(LB5399) after I/m Sherman struck I/m Proctor with soap in a sock. I gave I/m Proctor several direct orders along with I/m Sherman to stop fighting. I/m Both refused all orders.

**IMMEDIATE ACTION TAKEN AND REASON** Investigated no further injury indicated. Not appropriate for Informal Resolution due to seriousness of charge. Inmate placed in Prehearing confinement until reviewed by Hex. Seperate from Inmate LB5399 Sherman. Inmate refused a copy of this report at this time.

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| ☑ YES | **TIME** | **DATE** |
| ☐ NO | 1940 | 1-11-15 |

☑ REQUEST FOR WITNESSES AND REPRESENTATION   ☐ INMATE'S VERSION
**FORMS GIVEN TO INMATE**

| REPORTING STAFF MEMBER<br>SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY<br>RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| M. McCull co# M. McCulloch | A. Saylor Co II (Taylor) | **DATE**<br>1-11-15 | **TIME 24 HOUR BASE**<br>2140 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| **DATE**<br>1-13-15 | **TIME**<br>0800 | ☑ CLASS 1   ☐ CLASS 2 | Co # ___ / T. Davis |

### NOTICE TO INMATE
You are scheduled for a hearing on the allegation on the date indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15      YELLOW — Inmate      PINK — Reporting Staff Member      GOLDENROD — Deputy Superintendent Facility Management

EXHIBIT "D-1"



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

## NOTICE OF BOARD DECISION

NAME:  ANTHONY ERIC PROCTOR

INSTITUTION:  SCI - BENNER TWP

PAROLE NO: 244BM

INSTITUTION NO: CU4530

AS RECORDED ON MAY 09, 2014 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE DENIED PAROLE/REPAROLE. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF RISK TO THE COMMUNITY.

THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.

YOUR NEGATIVE INTEREST IN PAROLE.

YOU ARE TO SERVE YOUR UNEXPIRED MAXIMUM SENTENCE, 10/04/2017, DUE TO YOUR NEGATIVE INTEREST IN PAROLE. REVIEW ONLY UPON APPLICATION.

YOU MAY FILE AN APPLICATION FOR PAROLE/REPAROLE NO SOONER THAN 1 YEAR AFTER THE DATE THE LAST DECISION DENYING PAROLE/REPAROLE WAS RECORDED.

DIF  05/09/2014

PAROLE VIOLATION MAX DATE:  10/04/2017

Kimberly A. Barkley

**Kimberly A. Barkley**

**Board Secretary**

Notice of Board Decision

PBPP 15(08 02) 1 of 1

CLIENT COPY
ANTHONY ERIC PROCTOR          CU4530
SCI - BENNER TWP
301 Institution Drive
Bellefonte, PA 16823

U.S. Department of Justice
United States Marshals Service

**PROCESS RECEIPT AND RETURN**
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| | |
|---|---|
| PLAINTIFF *Anthony E. Proctor* | COURT CASE NUMBER |
| DEFENDANT *C. O. Graffius, et al* | TYPE OF PROCESS *"Complaint" Civil Rights Action 42 U.S.C. § 1983* |

**SERVE** ➤ NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
*State Correctional Institution (S.C.I.) Benner Township*

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
**AT** *301 Institution Drive, Bellefonte, PA 16823*

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

*Anthony E. Proctor, #CU-4530*
*S.C.I. Benner Township*
*301 Institution Drive*
*Bellefonte, PA 16823*

| | |
|---|---|
| Number of process to be served with this Form - 285 | *22 pages* |
| Number of parties to be served in this case | *22 defendants* |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):
Fold                                                                                          Fold

*"OFFICIAL CAPACITY"*

| Signature of Attorney or other Originator requesting service on behalf of: *Anthony E. Proctor* | ☑ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE *July 31, 2016* |
|---|---|---|---|

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. *(Sign only first USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. ____ | District to Serve No. ____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (complete only if different than shown above) | Date of Service / Time am / pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS:

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the

Block 1 *MIDDLE District of PA*

*Anthony E. Proctor #CU-4530*
_____
Block 2
*Plaintiff*

)
)
)
)
)

*C.O. Graffius, et al.*
_____
Block 3
*Defendant*

Civil Action No.   Block 4

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:   Block 5  *C.O. GRAFFUS, et al.*
_____
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within _____ days (give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: *August   ,2016*

_____
*Signature of the attorney or unrepresented party*

*Anthony E. Proctor*
_____
*Printed name*

*S.C.I. Benner Township, 301 Institution Drive, Bellefonte, PA 16823*
_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the

MIDDLE District of PA

Anthony E. Proctor, #CU4530
*Plaintiff*

v.

C.O. Laraffus, et al
*Defendant*

)
)
)
)
)
)

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: Anthony E. Proctor
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

Anthony E. Proctor
*Signature of the attorney or unrepresented party*

Anthony E. Proctor
*Printed name*

S.C.I. Benner Township, 301 Institution Drive, Bellefonte, PA 16823
_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.