**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANTHONY E. PROCTOR,                :
                                   :
            Plaintiff,             :
                                   :
      v.                           :      No. 3:16-CV-1666
                                   :
C. O. GRAFFFUS, *et al.*,          :      (Judge Brann)
                                   :
            Defendants.            :

**MEMORANDUM OPINION**

**MARCH 15, 2018**

## I.   BACKGROUND

This *pro se* civil rights action was filed by Anthony E. Proctor, an inmate

presently confined at the Benner State Correctional Institution, Bellefonte,

Pennsylvania (SCI-Benner).  By Memorandum Opinion and Order dated March 27,

2017, Plaintiff's motion for leave to proceed *in forma pauperis* was granted, the

first two counts of the complaint were dismissed, and Proctor was directed to

submit an amended complaint regarding his surviving allegations.  Service of the

amended complaint (Doc. 10) was thereafter ordered.

The amended complaint names sixteen (16) Defendants including Chief

Hearing Examiner Robin Lewis of the Pennsylvania Department of Corrections

(DOC).  Proctor is also proceeding against  the following SCI-Benner officials:

Superintendent Tammy Ferguson; Sergeant/Hearing Examiner James S. Ellenberger; Unit Manager C. Danison; Lieutenant Luciano; Sergeants McCullough, and James; Correctional Officer Hammers; Unit Manager Wilbert Matthews; Unit Counselor D. Sergeant, as well as five (5) Program Review Committee (PRC) members, Deputy Superintendent Bobbi Jo Salamon, Major Timothy Graham, Unit Manager David Link, CCPM Jennifer Rossman and Shawn Wiggins.

In his first claim, Proctor describes himself as being an African American who was assaulted by a "Young White Male" prisoner, Inmate Sherman, on January 15, 2015 in an SCI-Benner day room. Doc. 10, p. 2. Sergeant McCullough allegedly witnessed this incident but failed to protect Plaintiff's safety and later improperly issued Proctor a misconduct despite the fact that the inmate was acting in self-defense.

The second claim contends that Hearing Examiner Ellenberger violated Plaintiff's due process rights and engaged in retaliation by (1) finding him guilty of the misconduct charges of fighting and refusing to obey an order to stop fighting without supporting evidence, and (2) as a consequence for Proctor's refusal to sign a waiver allowing the Hearing Examiner to view a surveillance video of the incident. Plaintiff's third claim contends that PRC members Salamon, Link, Graham, Rossman, and Wiggins together with Superintendent Ferguson and Chief

Hearing Examiner Lewis violated Proctor's due process and engaged in retaliation by failing to overturn the finding of guilt on administrative appeal.

Plaintiff's fourth claim speculates that Defendants Luciano, James, and Hammers directed Inmate Sherman to assault the Plaintiff and/or tacitly approved the attack because they arrived on the scene "remarkably gleeful." *Id.* at p. 6. The fifth claim asserts that Superintendent Ferguson and Unit Manager Matthews violated Proctor's constitutional right of access to the courts by interfering with his ability to file a federal civil rights action regarding his pending claims.

Proctor's sixth and final claim alleges that Unit Manager Danison and Counselor Sergeant retaliated against him for inflicting injury on a white prisoner, Inmate Sherman, by providing him with an unfavorable parole recommendation.

Presently pending is Defendants' motion to dismiss the amended complaint for failure to state a claim. *See* Doc. 20. The opposed motion is now ripe for consideration.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn

therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007)(quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. *See* Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>see also</u>, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. *Id*. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. *See id.* at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562; *see also Phillips v. County of Allegheny*, 515

F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, it is well-established that *pro se* pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## B. Failure to Protect

Proctor alleges that Inmate Sherman attacked him from behind without provocation by repeatedly striking him with a bar of soap stuffed into a sock. The Proctor defended himself and admits that his assailant was eventually rendered unconscious and was found face down in a pool of blood at the conclusion of the altercation. Proctor contends that Sergeant McCullough witnessed Inmate Sherman laying in wait and did nothing to prevent the attack. *See* Doc. 10, p. 3.

Defendants initially argue that based upon Proctor's admission that Sherman's attack was an ambush, as well as the lack of any claim that there were pre-existing problems between Proctor and his inmate assailant, a viable failure to protect claim has not been stated. *See* Doc. 21, p. 20.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S.

25, 31 (1993). Under *Farmer*, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. *Beers-Capitol v. Whetzel*, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner. *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992); *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). The victim's custodial officials are exposed to civil rights liability only when if one "*knows or should have known* of a sufficiently serious danger to [the] inmate." *Young*, 960 F.2d at 361; *see also Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984).

The United States Court of Appeals for the Third Circuit has "stress[ed], however, that in constitutional context 'should have known' is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts."

*Young*, 960 F.2d at 361. As our Court of Appeals has explained, the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1025 (3d Cir. 1991). Instead, "[i]t connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk." *Id*. Moreover, "the risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." *Id*. Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners, . . . and that the prison officials have displayed 'deliberate indifference' to the danger." *Riley*, 777 F.2d at 147.

Based upon careful review of the amended complaint, Plaintiff does not assert any facts which would show that Sergeant McCullough knew or should have been aware that Inmate Sherman posed a risk to the Plaintiff's safety prior to the January 15, 2015 incident. There is no allegation by the Plaintiff that there was any pre-existing conflict between the two prisoners or that Proctor previously expressed any fears for his safety to any prison official. As acknowledged by Proctor himself, Inmate Sherman's attack was an ambush. There are no no facts alleged that any of the Defendants knew that Sherman had a history of violence against other prisoners or posed a risk to Plaintiff's safety and somehow

disregarded such risk.  Accordingly, there is no basis for liability against McCullough with respect to any alleged deliberate indifference claim for failure to keep Proctor and Sherman separated from one another prior to the incident.

The amended complaint includes a vague assertion that Sergeant McCullough saw Sherman laying in wait to attack the Plaintiff.  While the amended complaint states that Sherman was standing behind Proctor, it does not indicate how long Sherman was there nor does it identify the pre-attack location of McCullough.  There are also no facts alleged which could support a claim that Sergeant McCullough failed to exercise a needed level of supervision or saw that Sherman was going to attack Proctor and took no action.  It is also noted that this Court's March 27, 2017 Memorandum Opinion recognized that the original complaint did not raise a claim that McCullough saw that Sherman was going to attack and failed to intervene.  *See* Doc. 6, p. 4.

There are also no factual allegations showing that McCullough failed to intervene once the attack began.   To the contrary, Plaintiff admits that Sergeant McCullough gave multiple orders to the prisoners to cease fighting and that other correctional officers rushed to the scene.  Proctor initially states that he "was able to grab hold of the assailant until help arrived."  Doc. 10, p.  2.  Proctor later admits that he landed a "series of punches" on Sherman and that his attacker ended up unconscious and laying in a pool of blood.  *Id*., p. 5.  Based upon the facts

alleged by Proctor, this was an unfortunate, isolated attack by one inmate which culminated in a brief period of mutual combat. As such, a viable failure to protect/intervene claim has not been stated against Sergeant McCullough.

Based on the vague facts presented by Proctor, he has failed to describe any conduct which could be construed as deliberate indifference by McCullough. There are simply no facts alleged showing that McCullough somehow allowed the attack to occur or failed to take timely, appropriate action once it did. Plaintiff's claim appears to be nothing more than speculation and is therefore legally insufficient. The retaliation and equal protection claims against Sergeant McCullough will be addressed separately.

## C.    Due Process

In his second claim, Proctor alleges that Hearing Examiner Ellenberger violated his due process by finding him guilty of the misconduct charges. *See* Doc. 21, p. 21. Defendants argue that the denial of due process claim should not proceed because there is no viable claim that the misconduct hearing was inadequate.

According to the amended complaint, both Plaintiff and Inmate Sherman were issued misconduct charges as a result of the January 15, 2015 incident. Proctor was charged with fighting and refusing to obey an order to stop fighting by Sergeant McCullough. Sherman was both issued and purportedly found guilty of

three misconduct charges which resulted in a one hundred and twenty (120) day period of disciplinary confinement.

During a disciplinary hearing on the Plaintiff's charges, he purportedly refused a request by Hearing Examiner Ellenberger to view surveillance camera video of the incident. Proctor was found guilty of both charges by Ellenberger and initially sanctioned to the one hundred and twenty (120) day term of disciplinary custody in the SCI-Benner Restricted Housing Unit (RHU). A PRC committee consisting of Defendants Salamon, Graham, Link, Rossman and Wiggins upheld the finding of guilt.

Following a further administrative appeal to Superintendent Ferguson the findings of guilt were again upheld. However, the Superintendent ultimately reduced the disciplinary sanction to a sixty (60) day RHU term on the grounds that Inmate Sherman had initiated the altercation and Proctor initially acted in self defense. Superintendent Ferguson allegedly noted that while Plaintiff responded to Sherman's act of aggression he proceeded to engage in fighting and refused a verbal order to cease his conduct.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A protected liberty interest may be created by either the Due Process Clause itself or by state law. In order to determine whether a due process violation has

-10-

occurred, an initial determination must be made that a protected liberty interest exists and, if it does, the next step is to define what process is mandated to protect it. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Wolff v. McDonnell*, 418 U.S. 539, 563-73 (1974), the Supreme Court of the United States held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Wolff*, 418 U.S. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in *Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill*, 472 U.S. 445, 453-56 (1985). In *Hill,* the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Third Circuit and other courts applied the *Wolff* principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead resulted in disciplinary or

administrative segregation.  *See, Grillo v. Coughlin*, 31 F.3d 53 (2d Cir. 1994);

*Griffin v. Spratt*, 969 F.2d 16 (3d Cir. 1992); *Cook v. Lehman*, 863 F. Supp. 207

(E.D. Pa. 1994).

However, the Supreme Court's subsequent decision in *Sandin v, Conner*

marked a shift in the focus of liberty interest analysis from one "based on the

language of a particular regulation" to "the nature of the deprivation" experienced

by the prisoner.  *Sandin*, 515 U.S.  at 481.  In *Sandin*, the Supreme Court reasoned,

*inter alia*, that "[d]iscipline by prison officials in response to a wide range of

misconduct" is expected as part of an inmate's sentence.  *Id.* at 485.  The nature of

an inmate's confinement in disciplinary segregation was found similar to that of

inmates in administrative segregation and protective custody at his prison.  *Id.* at

486.

Focusing on the nature of the punishment instead of on the words of any

particular regulation, the Supreme Court held that the procedural protections in

*Wolff* were inapplicable because the "discipline in segregated confinement did not

present the type of atypical, significant deprivation in which a state might

conceivably create a liberty interest." *Id.*  The *Sandin* Court relied on three factors

in making this determination: (1) confinement in disciplinary segregation mirrored

conditions of administrative segregation and other forms of discretionary

confinement; (2) based on a comparison between inmates inside and outside

segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this circuit, applying *Sandin* in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement. *See Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); *Vorhauer v. Conrad*, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with Department of Corrections procedures did not give rise to a protected liberty interest).

Based upon an application of the law set forth in *Sandin* and the subsequent line of decisions cited above, the sixty (60) day disciplinary custody term imposed against Proctor was not of such magnitude as to implicate a protected liberty interest. Moreover, there is no discernible claim made by Proctor that he was denied any of the due process protections provided under either *Wolff* and *Hill*. Accordingly, Defendants' request for entry of dismissal with respect to the

allegation of denial of due process claim against Defendant Ellenberger will be granted.   The retaliation claim against Hearing Examiner Ellenberger will be addressed below.

### D.      Misconduct Appeal

Defendants next argue that the claims asserted against PRC members Salamon, Graham, Link, Rossman, and Wiggins; Superintendent Ferguson; and Chief Hearing Examiner Lewis which similarly seek to establish liability based upon the failure of those officials to overturn the finding of guilt rendered at Proctor's disciplinary hearing are meritless.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of *respondeat superior*.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *See Rizzo v. Goode*, 423 U.S. 362 (1976);

*Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As

explained in *Rode*:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . . [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence. Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

*Rode,* 845 F.2d at 1207.

Inmates do not have a constitutional right to a prison grievance system. *See*

*Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137-138 (1977);

*Speight v. Sims*, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30,

2008)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he

existence of a prison grievance procedure confers no liberty interest on a

prisoner."). Consequently, any attempt by Plaintiff to establish liability against a

defendant solely based upon the substance or lack of response to his institutional

misconduct appeal does not by itself support a constitutional due process claim.

*See also Alexander v. Gennarini*, 144 Fed. Appx. 924, 925 (3d Cir.

2005)(involvement in post-incident grievance process not a basis for § 1983

liability); *Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison

grievance procedure does not confer any substantive constitutional rights upon

prison inmates, the prison officials' failure to comply with administrative

procedure is not actionable).

Proctor's attempt to establish liability against PRC members Salamon, Graham, Link, Rossman, and Wiggins, Superintendent Ferguson, and Chief Hearing Examiner Lewis based solely upon their respective administrative reviews of the finding of guilt reached at Proctor's disciplinary hearing is insufficient for establishing civil rights liability against those Defendants. Dismissal will be granted in favor of Defendants Salamon, Graham, Link, Rossman, Wiggins, Ferguson, and Lewis.

### E.    Verbal Remarks

Plaintiff raises allegations based upon racially derogratory remarks and facial expressions purportedly made by various Defendants, notably Luciano, James, and Hammers, with respect to the altercation with Inmate Sherman. It is asserted by Proctor that Luciano, James, and Hammers appeared remarkably gleeful with Hammers indicating that he was stunned at the amount of harm inflicted upon Sherman. *See* Doc. 10, p. 6. Proctor vaguely claims that this alleged conduct should be construed as either showing that these Defendants directed Sherman to undertake the attack or voicing tacit approval of the assault initiated by Sherman. Defendants argue that the conduct attributed to Defendants Luciano, James, and Hammers is insufficient to support a viable claim of constitutional misconduct. *See* Doc. 21, p. 26.

It is well settled that the use of words generally cannot constitute an assault actionable under § 1983.  *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson,* 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  *Balliet v. Whitmire*, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986)  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n*, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying it, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  Moreover, alleged instances of verbal harassment which are not

accompanied by any physical contact are constitutionally insufficient.  *See Hart v. Whalen*, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008);  *Wright v. O'Hara*, 2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that the alleged verbal remarks and facial expressions attributed to Defendants Luciano, James, and Hammers, as well as any other Defendants, were  accompanied by a reinforcing act involving a deadly weapon as contemplated under *Northington* and *Douglas*.  More importantly, it is not alleged that the alleged remarks and expressions were accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported conduct, although perhaps offensive, was not of such magnitude to shock the conscience as contemplated by this Court in  *S.M. v. Lakeland School District*, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001).  Therefore, the verbal harassment referenced in the amended complaint by itself does not rise to the level of a constitutional violation.

Moreover, the Plaintiff's assertion that the post-incident expressions and remarks attributed to Luciano, James, and Hammers indicates that they encouraged or directed Sherman to undertake the attack is subject to dismissal.  It is again well settled that a plaintiff cannot rely on subjective suspicions and unsupported

speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). In the case at bar, there are simply no facts alleged which could arguably support a claim that those correctional officials or otherwise encouraged Sherman to assault the Plaintiff. Proctor's mere suspicions that Defendants Luciano, James, and Hammers somehow directed or encouraged the attack by Sherman are insufficient to set forth an actionable civil rights claim.

## F.    Access to the Courts

Plaintiff further alleges that Defendants Ferguson and Matthews interfered with his right of access to the courts on May 14-15, 2015 by intercepting a civil rights complaint which he intended to file with this Court. *See* Doc. 10, p. 7. The amended complaint generally asserts only that the two Defendants "orchestrated" the removal of Plaintiff's civil rights complaint from a prison mail bag. *Id.* at p. 15. Proctor admits that this alleged confiscated complaint asserted the same claims which are raised in his pending action. *See id.* He further admits that the document at issue was eventually received by the Court and that he thereafter elected to withdraw that initial civil rights action. *See id.* at p. 9.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services. *Bounds v. Smith*, 430 U.S. 817, 821-25 (1977). Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through

the right to petition the government and the right of access to the courts. "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under *Bounds*, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts. Under the standards mandated by *Lewis,* in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury. *See Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that *Lewis* effectively requires a showing of actual injury where interference with legal mail is alleged).

Following a careful review of the undisputed record, it is clear to this Court that Proctor has failed to adequately demonstrate that he suffered any injury to a non-frivolous legal claim as required under *Lewis*. Rather, Plaintiff's acknowledgment that his intercepted civil rights complaint asserted the same claims that are now before this Court and was later voluntarily withdrawn, along with his failure to show any resulting prejudice due to any delay, undermines any

claim of actual injury.

Accordingly, there are no facts or allegations which could support a claim that Proctor suffered actual injury to a non-frivolous legal claim as required under *Lewis*. Dismissal will be granted with respect to the claim of denial of access to the courts. It is also noted that Plaintiff has failed to present any facts showing that Defendants Ferguson and Matthews were personally involved in any confiscation of his legal mail.

### G.     Retaliation

Plaintiff also contends that Defendants subjected him to retaliation because he physically injured Inmate Sherman, a white inmate. *See* Doc. 10, p. 9. The alleged retaliation included the issuance of misconduct charges and the failure by Sergeant McCullough to charge Inmate Sherman with assault ( a more severe offense then fighting). It is also alleged that Hearing Examiner Ellenberger's finding of guilt was made in retaliation for Proctor's refusal to sign a waiver allowing review of a surveillance videotape. Plaintiff further contends that he did not obtain favorable parole consideration as retaliation for inflicting injury on a white inmate.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.

2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.*(quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.*(quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* at 333-34(quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult and

the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser,* 241 F.3d at 334.

Here, Defendants contend that Proctor fails to satisfy the first element of a retaliation claim because he does not allege that he that he was engaged in a constitutionally protected activity. Specifically, they rather sensibly maintain that involvement in an altercation with a fellow prisoner is not a constitutionally protected activity. *See* Doc. 21, p. 19.

The first prong of *Rauser* requires that the inmate be engaged in a constitutionally protected activity. This Court agrees that fighting with another inmate, even if one combatant claims to be acting in self defense, is not action which is afforded protection under our Constitution. As such, the claims that McCullough retaliated against Plaintiff for fighting by issuing him a misconduct and by only charging Inmate Sherman with fighting (as opposed to a more serious assault offense) fails to satisfy the requirement of *Rauser.*

Proctor also acknowledges that Inmate Sherman was issued an additional charge and received more severe punishment. Proctor further admits to inflicting injury on Sherman during the ensuing altercation including an apparent final blow which rendered his assailant unconscious. The above factors support a determination that the incident evolved into mutual combat and undermines the assertion of a retaliatory motive.

With respect to the finding of guilt by Hearing Examiner Ellenberger, Plaintiff indicates that both he and Inmate Sherman were found guilty of fighting and that he received a lesser punishment because the altercation was determined to have been initiated by Sherman. In light of those facts, the wholly speculative assertion that Ellenberger retaliated against Proctor for refusing to execute a waiver does not satisfy the third *Rauser* prong which requires that a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

Likewise, according to the amended complaint, Plaintiff admits that he was informed that his failure to obtain a favorable parole recommendation stemmed from the fact that he was found guilty of fighting with another prisoner. He contends that this was contrary to his previously issued correctional plan's directive that he refrain from committing institutional misconduct. There are simply no sufficient facts which arguably suggest that any of the Defendants acted with a retaliatory motive.

This Court is satisfied that the *Rauser* requirement that Plaintiff allege that his engagement in constitutionally protected activity was a motivating factor for the alleged acts of adverse action was not made out with respect to any of the vague claims of retaliation asserted. Plaintiff has also failed to set forth any facts which could establish a retaliatory motive by any of the Defendants.

**H.    Equal Protection**

Finally, Proctor contends that he was issued a misconduct because he was a black inmate who inflicted harm on a white inmate. Plaintiff also contends he was found guilty of that charge and given less favorable parole consideration for that same reason. Defendants argue that any equal protection claim must fail because Proctor does not identify any prisoners who were treated differently or state how they were treated differently. *See* Doc. 21, p. 27.

The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws." A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985). However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed*, 404 U.S. 71, 75 (1971).

The Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)); *see also Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an

individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

There are no facts alleged in the amended complaint which could support a claim that any of the Defendants engaged in intentional or purposeful discrimination or that Plaintiff was treated differently from similarly situated individuals on the basis of his race. While it is undisputed that Proctor was issued a misconduct following the altercation with Inmate Sherman, the amended complaint indicates that <u>both</u> prisoners were issued disciplinary charges. Plaintiff does not allege that Sherman was afforded more lenient treatment. In fact, Proctor admits his attacker received double the amount of disciplinary custody time.

Although the misconduct may have adversely affected Plaintiff's parole eligibility, there is no claim that other similarly situated prisoners received more favorable parole consideration. There are no factual averments alleged which could support a claim that any Defendant engaged in actions which intentionally discriminated against the prisoner because of his race. Rather, Plaintiff admits all of the challenged conduct stemmed from an incident where he inflicted injury on a fellow prisoner through the use of physical force.

Based on the standards announced in *Wilson* and *Artway*, a viable equal protection claim is not set forth in the amended complaint. Rather, this case boils down to a situation where an inmate unfortunately engaged in an excessive

response to an attack by another prisoner to such a degree that he went from being a victim to a combatant.

## III. CONCLUSION

For the reasons set forth _supra_, the motion to dismiss will be granted in all respects. An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge